KURN et al. v. MARGOLIN, Adm'r.

No. 29479.    March 26, 1940.

Rehearing Denied April 30, 1940.

*101 P. 2d 818.*

J. W. Jamison, of St. Louis, Mo., and Cruce, Satterfield & Grigsby, of Oklahoma City, for plaintiffs in error.

O. A. Cargill, Howard K. Berry, and O. A. Cargill, Jr., all of Oklahoma City, for defendant in error.

BAYLESS, C. J. An automobile being driven by one Jack Davis and in which John Washington was riding was struck by a St. Louis-San Francisco Railway Company passenger train. The collision occurred shortly after 8:30 a. m., on November 11, 1938, on a railway crossing intersecting High street, in Oklahoma City. In the collision John Washington sustained personal injuries; and on the day following he died. Thereafter this action, directed against the trustees operating the railway company, was commenced in the court below by an administrator of the estate of John Washington with a view to recovering damages which allegedly resulted from the personal injuries sustained by Washington in the collision aforementioned, together with damages resulting from his allegedly wrongful death. At the conclusion of the trial which followed, the jury, by general verdict, awarded the plaintiff amounts totaling $11,200. And the judgment was thereafter accordingly rendered. The defendants appeal.

The action was commenced in the court below on November 14, 1938; and thereafter, on January 16, 1939, the defendants filed their answer, alleging therein, inter alia, "for further answer and defense," that "* * * the automobile in which plaintiff's decedent was riding was being driven and operated by one Jack Davis, who at said time was on a joint mission with plaintiff's decedent; and that the negligence of the said Jack Davis wholly caused, or contributed to the accident complained of; without which said accident would not have occurred." On the trial date, February 13, 1939, upon the plaintiff's application and over objection by the defendant, the trial judge granted the plaintiff leave to file a reply to the defendant's answer. The reply, the allegations of which were verified under oath, was in substance and effect a denial generally of the allegations set forth in said answer, and a denial specifically that Jack Davis was "on or engaged in a joint mission" with the decedent as alleged in said answer. Upon the reply being filed the defendants moved for postponement of the trial, stating as their reason therefor the following: "That * * * plaintiff has at this time filed, for the first time, a verified reply to the defendant's answer, and has, therefore, set up new matters in said reply that it would be necessary to take a continuance in order to meet said new matters set up in said reply." The trial judge overruled said motion; and trial

upon the issues made by the pleadings was then commenced and carried on to conclusion.

In this appeal the defendants, now as plaintiffs in error, assign as error the action of the trial judge in refusing to grant their motion for postponement of the trial. And in their brief they urge to the effect that, having alleged in their answer that John Washington and Jack Davis were on a "joint mission" at the time the collision occurred, it followed, therefore, that provisions of section 220, Okla. Stats. 1931 (12 Okla. St. Ann. § 286) became operative in the case so as to warrant the allegation of "joint mission" to "be taken as true," unless and until a verified denial of said allegation was made and filed by the plaintiff, his agent, or attorney; and that, "when the defendants appeared ready for trial in this action, on the day it was set, they were not prepared for trial after said verified reply was filed, for defendants had been laboring under the impression, under the facts and the pleadings, and the statutes, it was admitted that Jack Davis and the deceased were on a joint mission."

The language employed in the motion for postponement of the trial denotes only one reason as being advanced therein to the trial judge for the purpose of having a postponement; namely, the necessity of obtaining evidence to support the allegation of "joint mission." Hence granting or refusal of the motion rested within the discretion of the trial judge. Grant v. First State Bank of Miami, 96 Okla. 245, 221 P. 769. And his action with respect to said motion will not be disturbed, unless from the record brought up on this appeal abuse of the discretion is clearly shown therein. Oil Reclaiming Co. v. Reagin, 169 Okla. 505, 37 P. 2d 289; Hope v. Gordon, 174 Okla. 368, 50 P. 2d 669; Barlow, Adm'x, v. Prudential Ins. Co. of America, 178 Okla. 265, 62 P. 2d 969. The record as brought to this court does not reflect that upon the motion for postponement being presented in the court below any showing whatever was there made on the part of the defendants touching upon the probability of their being able to procure evidence going to establish their allegation of "joint mission." The record does reflect the following: That upon said motion being made, the trial judge indicated to the defendants' counsel that if said counsel "was serious about the issue of joint mission," a continuance would be granted; that the counsel's reply thereto was "to this general effect": "That the defendants had no evidence on the question of joint mission and that so far as he knew then there was no evidence of joint mission." That from this statement of counsel, the trial judge "gained the impression that the railway company had thoroughly investigated the case and was not seriously contending that there was joint mission involved in the case; that a continuance would not avail the defendants anything substantial in an evidentiary way, but that he (counsel) did want to protect his record." Therefore, considering the statement of defendants' counsel that, so far as he then knew, "there was no evidence of joint mission"; and also taking into consideration the fact that the record discloses no showing whatever as having been made to the trial judge of the probability of the defendants being able to procure evidence which would tend to establish their allegation of "joint mission," we think it not clearly shown in the record that the action of the trial judge in refusing to sustain the motion for postponement of the trial constituted an abuse of discretion. We think such conduct on the part of the defendant a waiver of its rights under section 395, O. S. 1931, 12 Okla. St. Ann. § 666, and his action with respect to said motion will therefore not be disturbed.

The giving of a certain instruction is also assigned as error.

It appears the plaintiff had alleged, inter alia, that the defendants, acting through agents, were operating the train through the railway company's east yards in Oklahoma City immediately prior to and at the time of the collision at a "high, reckless and dangerous rate

of speed, to wit, 35 miles per hour"; and further, that the defendants, acting as aforesaid, "were careless and negligent" in operating said train at the rate of speed stated, "in that said speed was contrary to and in violation of" the provisions of a certain ordinance of the city of Oklahoma City. At the trial, testimony adduced on the part of the plaintiff tended to show that the train was being operated at a rate of speed of approximately 35 miles per hour immediately prior to and at the time the collision occurred; that the automobile in which Washington and Davis were riding was traveling south on High street; and further, that at the time the collision occurred, "four or five oil tank cars and some boxcars" were standing on a track located immediately north of and paralleling the track on which the passenger train was traveling, and that the tank cars and boxcars were standing so that the east end of the string of said cars was at a distance of about "ten or fifteen feet" from the west side of the railway crossings intersecting High street. Testimony adduced on the part of the defendants tended to show the rate of speed of the passenger train as not being in excess of 25 miles per hour, and that there were no cars of any kind or description standing in the near vicinity of High street on any of the tracks north of the track on which said passenger train was traveling.

The ordinance to which the plaintiff had referred was introduced in evidence: and certain parts of said ordinance were quoted in the instruction in question. The instruction, as given, reads as follows:

"You are instructed that under the evidence in this case the plaintiff is the duly appointed, qualified and acting administrator of the estate of the deceased, John Washington, and that the collision complained of occurred within the city limits of Oklahoma City, and that at the time and place of said collision there was then in full force and effect, and applicable, a city ordinance which provided:

" 'No person shall drive a vehicle on any highway or operate a railroad train or street car at a speed greater or less than is reasonable or prudent under the conditions then existing, taking into consideration, among other things, the condition of vehicle, roadway, and weather, the amount of light or darkness, the amount of traffic, the presence of pedestrians in or near the roadway, and the obstruction of view.' * * *

" 'Trucks or other commercial vehicles of from one to one- and one-half tons capacity, inclusive, factory rating, and railroad trains and street cars shall be subject to all the above requirements provided that the maximum speed limit under any condition shall be 25 miles per hour.'

"A violation of said ordinance by the operators of said train of the defendants, would constitute negligence per se, that is, negligence as a matter of law."

The plaintiffs in error say, in their brief, that the part of the ordinance embodied in this instruction "covers things and conditions in support of which plaintiff made no allegation and offered no proof," in that neither allegation nor proof was made of the following: (a) "That the railroad train was operated at a speed greater or less than was reasonable or prudent under the conditions; (b) "that the engine pulling the train was defective or otherwise"; (c) "as to the weather"; (d) "as to the condition of the light or darkness"; and (e) "as to the presence of pedestrians on or near the railroad."

Applicability of the provision contained in the ordinance to the effect that, for railroad trains, the maximum speed limit "under any condition shall be 25 miles per hour," must be conceded. And when a certain allegation which is set forth in the plaintiff's petition, and, the evidence adduced in support thereof, is taken into consideration, it seems to us that applicability of the provision of said ordinance relating to operation of railroad trains "at a speed * * * greater than is reasonable or prudent under the conditions then existing," etc., readily becomes apparent. For it is to be remembered the plaintiff alleged that the train was being operated through the railway company's east yards in Oklahoma City

immediately prior to and at the time of the collision at a "high, reckless and dangerous rate of speed," "contrary to and in violation of the ordinance." And it is also to be remembered that the collision occurred in the daytime, and that the plaintiff adduced evidence at the trial tending to show (a) that at the time of the collision and immediately prior thereto the train was traveling at a rate of speed of approximately 35 miles per hour, and (b) that a string of oil tank cars then and there were located in a position whereby they tended to obstruct a view of the train by the occupants of the automobile as said automobile approached and entered the area of the railroad crossings intersecting High street. Hence, in view of the allegation and supporting evidence referred to, we are of the opinion the giving of the instruction aforementioned did not constitute error in the respect urged by the plaintiffs in error.

Another assignment by the plaintiffs in error is to the effect that the trial judge erred in allowing the plaintiff's witness Joe O. Miller to testify as to the distances within which trains could be stopped under certain circumstances when traveling at different rates of speed. The plaintiff produced this witness after the trial had progressed to the rebuttal stage. The witness, by way of qualifying, testified, among other things, that he had served a total of 29 years as a railroad machinist foreman and general foreman; that he had had practical experience in the "operation of engines and stopping devices and the application of air"; that he had "run engines out with engineers and firemen to test them and the speed ability and stopping ability * * *"; that, if given the "rate of speed at which a given type of train was moving," together with certain other data, he could "figure out approximately the amount of feet" within which a train could be stopped "under these conditions." We think there was no prejudicial error in the ruling complained of. The competency of the witness was a preliminary question to be decided by the trial judge, and one in which his dis-

cretion could properly be exercised. Yates v. Garrett, 19 Okla. 449, 92 P. 142; Bell v. Tackett, 134 Okla. 164, 272 P. 461. We find no abuse of discretion. The time and manner of the admission of this evidence was a matter also within the trial judge's discretion. Tancred v. Holuby, 124 Okla. 97, 254 P. 75. And we find no abuse of that discretion.

The plaintiffs in error also contend to the effect that the awards by the jury were "given under the influence of passion and prejudice." A principle applicable to this contention is that announced in Oklahoma Producing & Refining Corporation v. Freeman, 88 Okla. 166, 212 P. 742, and followed in Marland Refining Co. v. Harrell, 167 Okla. 548, 31 P. 2d 121, as follows:

"In an action for damages for personal injuries sustained, the court will not grant a new trial on the ground of excessive damages unless the amount so awarded be so flagrantly outrageous and extravagant as to clearly show that the jury was actuated by passion, partiality, prejudice, or corruption."

In the present case, the amounts awarded were fixed by the jury and approved by the court below. We find nothing in the record before us tending to clearly show passion, partiality, prejudice, or corruption as actuating in any respect the awards made. And we conclude, therefore, that the contention of the plaintiffs in error is without merit.

The judgment rendered in the court below is affirmed.

RILEY, CORN, HURST, and DAVISON, JJ., concur.