## INDIAN TERRITORY ILLUMINATING OIL CO. v. CARTER.

No. 24328.   April 28, 1936.

Fred M. Carter, Hamilton & Howard, W. P. McGinnis, and Donald Prentice, for plaintiff in error.

Jos. T. Dickerson, James B. Diggs, W. P. Z. German, J. H. Hill, M. D. Kirk, Hayes McCoy, W. P. McGinnis, Lloyd G. Owen, Alvin Richards, Clay Tallman, and William H. Zwick, amici curiae, for plaintiff in error.

McCoy, Craig & Pearson, for defendant in error.

OSBORN, V. C. J.   This action was filed in the district court of Osage county by C. A. Carter, hereinafter referred to as plaintiff, against the Indian Territory Illuminating Oil Company, hereinafter referred to as defendant, as an action to recover damages to cattle and pasture land on account of the pollution of a stream. The cause was tried to the jury and a verdict was rendered in favor of plaintiff for $1,500.   From a judgment thereon defendant has appealed.

Plaintiff alleges that he was engaged in the cattle business in Osage county and

was in possession of 480 acres of pasture land located in section 36, twp. 25 N., range 9 E., and was the owner of certain cattle which were grazing thereon; that defendant was conducting certain oil and gas mining operations upon the property adjacent thereto, and on or about April 1, 1931, defendant permitted oil, salt water, and other deleterious substances and waste to escape from its oil and gas mining operations and flow into a certain draw which ran through a portion of plaintiff's pasture lands; that the water in said draw was polluted by the poisonous substances so escaping and that the cattle drank the poisonous and polluted water to their damage and injury; that the plaintiff was compelled to abandon the use of the pasture, to his damage in the sum of $240. Plaintiff sought damages against defendant in the total sum of $2,665.

For answer defendant filed a general denial and admitted that it was the owner and operator of an oil and gas mining lease covering all of section 36, township 25 north, range 9 east, in Osage county, Okla., and had been producing oil and gas from its wells on said premises for a number of years prior to April 1, 1931, and that plaintiff knew when he put his cattle in said pasture that defendant had such producing oil wells on the premises, and if plaintiff had exercised reasonable care and diligence he could have procured pasture for his cattle elsewhere, and if plaintiff suffered damages as alleged in his petition, same was due to his own contributory negligence in pasturing cattle on premises where oil and gas wells had been producing for a number of years. It is further alleged that defendant furnished an ample supply of fresh water for plaintiff's cattle, and having access to said fresh water, the cattle would not and did not drink salt water. It is further alleged that under the provisions of section 3 of the Act of Congress of June 28, 1906, as amended by the Act of Congress of March 2, 1929, 45 Stat. 1479 (an act peculiar to the Osage Nation), the Secretary of the Interior promulgated rules and regulations for the settlement of all claims for damages to the surface owner or lessee of any land in Osage county on account of the operation of any oil or gas lease. The said regulations provided for the service of a notice of 10 days by the aggrieved party upon the superintendent or foreman of the oil and gas lessee setting forth the nature and amount of the damages resulting to said aggrieved party; that the service of said notice is a condition precedent to the institution of an action for damages, and since said notice was not filed within 10 days after the alleged accrual of the damages involved herein, plaintiff's recovery is barred by failure to comply with said regulation.

Upon appeal defendant contends that the trial court erred in the admission of certain evidence, the rejection of certain evidence, and that all the evidence is insufficient to sustain the verdict of the jury. In this connection it is urged that only a veterinarian was properly qualified to give an expert opinion upon the cause of the change of condition of cattle, and that a cattleman, however experienced, was incompetent to testify in relation thereto. This position is not supported by the authorities. This court has adopted the view that where a witness has had experience as a farmer and cattle raiser with cattle which are infected with a disease, he is sufficiently expert to be allowed to give his testimony, the weight and effect of said testimony to be determined by the jury, and in such cases the party is not confined to what is known as strictly and exclusively expert testimony. Yates v. Garrett, 19 Okla. 449, 92 P. 142; Kewanee Oil & Gas Co. v. Mosshamer, 58 F. (2d) 711. We therefore hold that men long experienced in handling cattle in the oil fields are competent witnesses and are qualified to tell from the outward visible condition of cattle whether or not such symptoms indicate salt water poisoning.

Defendant offered the evidence of a certain witness who had turned his cattle into the pasture a week or ten days after plaintiff's cattle had been removed and offered to prove by said witness that his cattle did not suffer injury from salt water, but there was evidence showing that the conditions at that time were changed and that the salt water dam had been repaired and that the flow of salt water over the pasture lands had been stopped. In view of such changed conditions, the court did not err in rejecting such evidence.

The testimony was sharply conflicting, but the controversial issues of fact were submitted to the jury to determine such issues. In a law action this court will not weigh conflicting evidence to determine on which side the preponderance lies.

Defendant assigns as error the action of the trial court in overruling challenges to various jurors on the ground that the voir dire examination disclosed bias and prej-

udice on the part of said jurors against the defendant. We have examined the evidence and find no merit in this contention. The competency and qualifications of jurors in the trial of a case must be left largely to the discretion of the trial court. Rulings of the trial court upon challenges to individual jurors of bias and prejudice will not be reversed unless it appears that the court has abused this discretion to such an extent as to work an injustice upon one of the parties. Dyal v. Norton, 47 Okla. 794, 150 P. 703.

Defendant contends that the trial court erred in refusing to give certain requested instructions. In this connection we have examined the requested instructions and the instructions given by the court and find that said instructions fairly presented to the jury the material issues involved in the case and that there is no merit in this contention.

In its answer defendant alleges the failure of plaintiff to comply with the provisions of section 2 of the Act of Congress of March 3, 1921 (41 Stat. 1249), as amended by the Act of Congress of March 2, 1929 (45 Stat. 1478, 1479), and the regulations of the Secretary of the Interior for the settlement of claims for damages. The pertinent portions of the congressional act are as follows:

"The bona fide owner or lessee of the surface of the land shall be compensated, under rules and regulations prescribed by the Secretary of the Interior in connection with oil and gas mining operations, for any damage that shall accrue after the passage of this act as a result of the use of such land for oil or gas mining purposes, or out of damages to the land or crops thereon, occasioned thereby, but nothing herein contained shall be construed to deny to the surface owner or lessee the right to appeal to the courts, without the consent of the Secretary of the Interior; in the event he is dissatisfied with the amount of damages awarded him. All claims for damages arising under this section shall be settled by arbitration under rules and regulations to be prescribed by the Secretary of the Interior: but either party shall have the right to appeal to the courts without consent of the Secretary of the Interior in the event he is dissatisfied with the award to or against him. The appeal herein authorized shall consist of filing an original action in any court of competent jurisdiction sitting at the county seat of Osage county, to enlarge, modify or set aside the award, and in any such action, upon demand of either party, the issues, both of law and of fact shall be tried de novo before a jury upon the request of either party. Arbitration, or a bona fide offer in writing to arbitrate, shall constitute conditions precedent to the right to sue for such damages: Provided, That nothing herein contained shall preclude the institution of any such suit in a federal court having jurisdiction thereof, or the removal to said court of any such suit brought in the state court which under federal law may be removed to the federal court: Provided, further, That nothing herein shall be construed to limit the time for any action to be filed to less than 90 days."

Pursuant to the authority granted to him by the above act the Secretary of the Interior promulgated certain regulations providing for an arbitration of claims arising under the provisions of said act. The particular regulation which is pertinent to the issue herein involved is as follows:

"Where the surface owner or his lessee of any lands suffers damages on account of the operations of any oil or gas lessee, procedure for the recovery shall be as follows:

"(a) The party or parties aggrieved shall within ten (10) days after the discovery of any such damages or within such extended time as the Superintendent of the Osage Indian Agency may grant, serve the oil or gas lessee, or the foreman or superintendent named by him under paragraph 34 hereof, with written notice setting forth the nature of alleged damages, the date when the same were sustained, as nearly as possible, together with the names of the party or parties causing the same, if obtainable, and the amount of damages resulting therefrom. It is not intended by this requirement to limit the time within which action may be brought in the courts to less than the 90-day period allowed by section 2 of the Act of March 2, 1929, but it is intended to provide for an early examination of the property damaged by all parties interested to the end that the best possible evidence, much of which due to the nature of the damages or the property damaged, will be gradually obliterated and completely lost with the passage of time, be preserved for the board of arbitration or the court in event of failure of the parties to settle the claim by arbitration."

It is noted that there are two elements of damage involved in this case, damages to the surface of the land and damages to cattle. It has heretofore been determined by this court that the Act of Congress and the regulations of the Secretary of the Interior have no application to a claim arising for damages to cattle caused by pollution of stock water by oil and salt

water escaping from wells in Osage county. I. T. I. O. Co. v. Graham, 174 Okla. 438, 50 P. (2d) 720; Devonian Oil Co. v. Smith, 124 Okla. 71, 254 P. 14; Midland Oil Co. v. Ball, 115 Okla. 229, 242 P. 161.

The record shows that in this case plaintiff consulted with his attorney on June 5 to 7, 1931, that on July 16, 1931, plaintiff's attorney mailed by registered mail to the defendant the following letter:

"July 16, 1931

"Indian Territory Illuminating Oil Co.

   "Bartlesville, Oklahoma

"Gentlemen:    Re: Claim of C. A. Carter

"My client, Mr. C. A. Carter, has heretofore taken up with you the matter of his claim against you for damages caused by salt water which has been permitted to escape from your oil and gas mining operations upon the west half of section 36, township 25, range 9, Osage county, Oklahoma, the details and items of such claim being as follows:

| | |
|---|---:|
| 71 head of cows, each with small calf, each pair (cow and calf) damages of $25.00 | $1,775.00 |
| 15 cows damaged $15.00 per head | 225.00 |
| 9 cows, each with short yearling calf each pair (cow and calf) damaged $35.00 | 315.00 |
| 3 bulls damaged $20.00 per head | 60.00 |
| Loss of use of pasture—480 acres @ $.50c per acre | 240.00 |
| Expense of moving cattle away from polluted water | 50.00 |
| Total | $2,665.00 |

"The description of Mr. Carter's pasture where this damage is claimed to have been sustained and which he was forced to abandon and lose the use of is the south half, and the south half of the north half, section 36, township 25, range 9, Osage county, Oklahoma.

"As before stated, Mr. Carter has heretofore taken this matter up with you, and I am advised that your representative, Mr. F. E. Turner, in the presence of both Mr. Carter and Mr. John R. Pearson, of this office, not only declined to make any settlement, but also declined to arbitrate this controversy. I shall appreciate it if you will advise me if this is your final decision upon this matter and if I do not hear from you to the contrary within ten days from this I shall take it that you concur in the decision of your Mr. Turner in refusing to make settlement or to submit the matter to arbitration and shall proceed according to my client's instructions.

   "Yours very truly,
        "Frank T. McCoy."

The evidence discloses that no response was made by defendant to the above letter. It therefore appears that there was a bona fide offer on the part of plaintiff to arbitrate his claim, but it is urged that the offer came too late for the reason that the regulation promulgated by the Secretary of the Interior provides that the notice of damages must be served upon the oil and gas lessee within ten days after the discovery of any such damages or within such extension of time as the Superintendent of the Osage Indian Agency may grant, and the failure to comply with this provision is a condition precedent to the right to maintain the action for damages. In this connection it is noted that the act of Congress itself provides that "nothing herein shall be construed to limit the time for any action to be filed to less than 90 days," and the regulation provides "it is not intended by this requirement to limit the time within which actions may be brought in the courts to less than the 90-day period allowed by section 2, of the Act of March 2, 1929," and the regulation further expresses the purpose and intent of the Secretary of the Interior in providing for such ten-day notice. We think a fair interpretation of the regulation itself would not justify the conclusion that the failure to give the ten-day notice would destroy the right to institute the action. But if there was such intent and purpose on the part of the Secretary of the Interior, such provision would be ineffective and invalid, as contrary to the express provisions and intent of the congressional act.

"It is well settled that department regulations may not invade the field of legislation, but must be confined within the limits of congressional enactment. In International Ry. Co. v. Davidson, 257 U. S. 506, 514, 42 S. Ct. 179, 182, 66 L. Ed. 341, the court said: 'Section 161 does not confer upon the Secretary any legislative power.' Morrill v. Jones, 106 U. S. 466, 1 S. Ct. 423, 27 L. Ed. 267: United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712. A regulation to be valid must be reasonable and must be consistent with law." Commissioner of Internal Revenue v. Van Vorst, 59 F. (2d) 679.

In Doran v. Colonial Drug & Sales Co., 58 F. (2d) 65, the United States Circuit Court of Appeals said:

"* * * No rule or regulation may be adopted and enforced which conflicts with an act of Congress in force. Such rule or regulation cannot amend, enlarge, or abridge the operation of the act. United States v. Antikamnia Chemical Co., 231 U. S. 654, 34 S. Ct. 222, 58 L. Ed. 419; United States v. George, 228 U. S. 14, 33 S. Ct. 412, 57 L. Ed. 712: Oertel Co. v. Gregory, District Attorney, et al. (D. C.) 270 F. 789."

In line with these authorities and in accordance with the obvious intent and purpose of the Secretary of the Interior, we must construe the regulation requiring the 10 days' notice as directory only and not mandatory.

Various other assignments of error have been examined and are without substantial merit.

The judgment of the trial court is affirmed.

RILEY, BAYLESS, WELCH, CORN, and GIBSON, JJ., concur. BUSBY, J., dissents. McNEILL, C. J., and PHELPS, J., absent.